ESTELLA O. BULLOCK, RESPONDENT, v. AETNA LIFE INSURANCE CO., APPELLANT.—76 S. W. (2d) 726.

Kansas City Court of Appeals. November 13, 1934.

*Mosman, Rogers & Buzard* and *Arthur F. Schmalfeldt* for respondent.

*Morrison, Nugent, Wylder & Berger* and *Charles C. Byers* for appellant.

SHAIN, P. J.—This is an action by the named beneficiary under a policy of group insurance.

It appears that in July, 1925, the Federal Pure Food Company took out with the Aetna Life Insurance Company a master policy

which insured the life of certain of its employees, one of said employees being Albert Jasper Bullock, the husband of the respondent herein, who was the plaintiff below, and hereinafter so designated.

It appears that said Bullock came within a class that provided for insurance in the sum of one thousand ($1,000) dollars. It appears that Mr. Bullock died on February 22, 1927, and at a time when the Federal Pure Food Company had a live master policy with the defendant insurance company.

It appears further that no suit was ever filed by the plaintiff herein or by anyone else until this suit was filed. Arthur F. Schmalfeldt, an attorney of Kansas City, Missouri, prior to the filing of suit, wrote the company a letter on behalf of the plaintiff and enclosed proofs of death signed by the physician in attendance on Mr. Bullock at the time of his death. In this letter the writer said:

"The amount of the Insurance called for in Mr. Albert Jasper Bullock's policy was one thousand dollars ($1,000). The 'Group Policy of Insurance No. 2860,' Certificate date September 26, 1925. Certificate No. 167.

"Will you please present the Proof of Death to the proper person, so that payment may be promptly made to the widow, Mrs. Estella Orilla Bullock."

It appears that blanks, upon which to make proofs of loss, had been requested and the same received by the attorney.

Suit was filed by the plaintiff in the Circuit Court of Platte County, Missouri, December 8, 1933. In this suit the plaintiff seeks to recover from the defendant on the death of her husband in the sum of one thousand ($1,000) dollars as principal with interest at six (6%) per cent thereon from February 24, 1927, and the further sum of one-hundred ($100) dollars for penalty by reason of vexatious delay and for the further sum of five hundred ($500) dollars attorney fees. The plaintiff pleads that the master policy and certificate of insurance involved was in full force and effect when Albert Jasper Bullock died and pleads due performance of all matters requisite to recovery.

The defendant joined issue by general denial and further affirmatively pleads that the insurance on the life of said Bullock had been cancelled by notice and order of the Federal Pure Food Company, prior to the death of said Bullock, and that after said cancellation said Bullock was not thereafter at any time covered by any insurance or certificate issued by the defendant.

To the answer of the defendant, the plaintiff files general denial.

Trial was by jury resulting in a verdict for the plaintiff in the sum of one thousand fifty-one dollars ($1,051). Judgment was entered in accordance and the defendant duly appealed.

Claim of errors are presented by the defendant in assignment of errors and points and authorities, as follows:

"1. The court committed error in failing and refusing to direct a verdict for the defendant.

"2. The court committed error in admitting, over the objections and exceptions of defendant, immaterial, irrelevant and incompetent evidence offered by plaintiff. This assignment is amplified in appellant's points and authorities.

"3. The court erred in giving the jury, over the objections and exceptions of defendant, plaintiff's instruction number 1 as modified by the court.

"4. The court committed error in refusing to give the jury defendant's requested instruction in the nature of a demurrer to the evidence at the close of the entire case, said instruction being numbered or lettered 'B.'

"5. The court erred in refusing to give the jury defendant's requested instruction numbered or lettered 'C.'

"6. The court erred in overruling defendant's motion for a new trial, and in failing and refusing to grant a new trial to defendant because of the absence of substantial evidence in support of plaintiff's case and the verdict."

Point one of defendant's assignment is merged in assignment four and will be considered under that head.

OPINION.

To an understanding of the issues presented herein, we note that it stands admitted the plaintiff's husband was an insured in the master policy when it was issued to the employer and that said deceased husband came within Class 2 of the policy, which is indicated as follows:

"Class 2 Active Salesmen whose monthly sales are between $20 and $40 net value $1000."

The insurance provided automatically ceased if employment ceased and the master policy in issue bore a rider wherein it is provided, as follows:

"It is understood and agreed that, notwithstanding employment has not terminated, the employer may effect cancellation of any individual insurance in class 2 or 3 in accordance with such rules and regulations as are adopted by the employer. The employer shall file with the company a copy of the rules and regulations it adopts for the cancellation of insurance.

"The card for such individual insurance with a statement thereon showing the reason for cancellation shall be returned by the employer to the company."

Further, the master or group policy in issue, as of the 31st day of August, 1929, bore a rider providing as follows:

"Provision in the policy to the contrary notwithstanding, it is understood and agreed that no insurance shall become effective under this policy for salesmen after this date.

"This rider is issued in consideration of the employer's application therefor.

"Written notice to the company by the employer of the attachment of this rider to said policy shall constitute its acceptance.

"Hartford, Connecticut, this thirty-first day of August, 1929.

"Aetna Life Insurance Company.

"J. E. GRIFFITH, JR.,

"Secretary."

The above provisions are especially to be considered under assignment four or refusal to give defendant's offered instruction B in the nature of a demurrer at the close of all the evidence. To this point, we direct our first attention.

It stands conceded that plaintiff's husband, Bullock, was in the employment of the Federal Pure Food Company from the time of the issuance of the master policy until his death.

The above being considered, the introduction of the master policy in evidence and the proof of death being made, the plaintiff was entitled to go to the jury unless the defendant has conclusively shown by its evidence that the certificate of insurance issued to plaintiff's husband was duly cancelled prior to the death of said Bullock and that the same was never renewed in the lifetime of said Bullock. As there is no proof of reinstatement, the issue depends largely upon the fact as to whether there was ever a cancellation.

The defendant failed to produce and offer in evidence original documentary evidence conforming to the method and procedure fixed by the contract and by the methods adopted by the original contracting parties. The failure to produce the documentary evidence above referred to is explained by the defendant company as being due to a practice of the company to destroy such documents after a lapse of six years. We conclude that the explanation given is such as to preclude the defendant from being penalized for wrongful destruction of evidence. However, as this suit was brought within the period of limitations, the defendant must suffer the consequences, if the evidence produced be of such a character and nature as it becomes the province of a jury to pass upon.

It further appears from the evidence in this case that the Federal Pure Food Company had a habit of weeding out papers every six months. This fact, of course, cannot be charged to the fault of the litigants herein but, of course, does subject either side to the loss of such evidence as might have been disclosed by the writings and documents if missing.

The long delay in bringing this action is a further notable feature

of the case at bar, this the plaintiff explains as due to the fact that an attorney, in whose hands placed, had died and certificate misplaced for some time.

These incidents above mentioned, regardless of explanation given, bring confusion into the case. Throughout the trial, gaps occasioned by missing documentary evidence were attempted to be filled in by oral testimony that on occasion were opinionative and constituted but the conclusion of the witness. This on occasion caused colloquy between court and counsel which resulted in an apparent conclusion that the matter, concerning which was being discussed, was a matter for the jury.

Under the provisions of the master policy, the employer had the option to cancel a salesman's certificate if his sales fell short. It is, however, shown that this was not always done.

The manner of the employer effecting cancellation is set forth in a rider which we have set out above. No such procedure, as provided in the above rider and as shown by the evidence to be the mode, was ever introduced in evidence. The defendant does offer what is designated, as of March, 1926, as a duplicate of a card. This exhibit, evidentially a skeleton carbon copy, does not conform to or correspond to the provisions of the rider and the method testified to, in that no request from the employer is shown.

The above exhibit was presented by defendant's witness, Irving F. Cook, Assistant Secretary of Group Division of the Aetna Life Insurance Company. There is nothing in the exhibit that tends to show that the same was a request of the employer for the cancellation of any insurance. The witness testified that he had made diligent search for such a request and had found none. Much other documentary evidence was offered by the defendant which, when supplemented by oral testimony, might present matter from which inference might be drawn that the employer had sent in a request for cancellation and the further inference that the certificate in issue had been cancelled. Inference, however, was for the jury.

The defendant took the deposition of one Roman G. Uselman, Assistant Sales and Traffic Manager of the Federal Pure Food Company. This witness testified that he had looked through the files of the employer company seeking to find as to whether notice of cancellation of the Bullock insurance had been sent by the employer to the defendant company and had found no such notice. This witness further testified, "that when a salesman's insurance was terminated, we signed a card and sent it to the company."

There were carbon copies of two written instruments, purported to have been written by defendant at the request of the employer, that purported to give the names of the men covered by the group policy in January, 1927. Mr. Bullock's name was not on either of

these lists. We conclude that these documents, while being competent evidence, are not conclusive of the fact that Bullock's insurance had been cancelled for the reason that there is no direct proof from which we may conclude, as a matter of law, that the employer had ever taken the required steps to effect cancellation. Had the defendant produced a request from the employer, then these lists would have fully established the defense plead and the great array of oral testimony could have been dispensed with. However, as the matter was presented to the trial court the testimony, considering the issue involved, is very voluminous and on review we are presented with a record of two hundred and ninety-three pages.

We conclude that we have burdened our opinion with enough of the character and substance of the evidence to justify our conclusion that the court did not commit error by refusing defendant's instruction ''B.''

The appellant cites an array of authorities that can have no application if it be concluded, as we have concluded, that the introduction of the policy and the making of proof of death is sufficient to present an issue of fact for the jury.

The defendant's brief presents, that a scintilla of evidence is not sufficient, that expressions of belief or impression are not sufficient and that uncertain and vague parol expressions are overcome by definite or printed evidence and records.

The master policy, the certificate issued thereunder and the proof of death present documentary evidence that needs no oral evidence to explain. On the other hand, the failure to produce original documentary evidence, however explained, presents occasion for oral evidence that we conclude presents issues of fact for the jury.

In defendant's specification two, error in admission of evidence is urged. The defendant gives no citation as to where the matter complained of may be found in the record, but does make some statement as to the nature of the evidence complained of.

The plaintiff was permitted to testify that she had never seen any notice or letter from the defendant, or from the Federal Pure Food Company, notifying her husband that his contract of insurance had been cancelled. Such a letter, if same had been seen by her, would not necessarily have been binding upon her. [Douglas v. Metropolitan Life Ins. Co., 297 S. W. 87.]

The record shows that the question was not objected to until after answered by the witness and no motion to strike out the answer is shown.

The defendant complains as to the testimony of witness Uselman as to markings upon Exhibit 1 and 1-A. The record is so interspersed with such objections by counsel of both sides that, in absence of more specific reference as to which objection and as to where found in the

113 pages of Mr. Uselman's testimony, we pass the complaint without further comment.

General assignments of error, concerning reference to an alleged letter, to conjectural testimony as to a date, to alleged order blanks and as to value of attorney fees, are set out in the appellant's brief. In these assignments the exact matters complained of are not plainly set out and it is not designated or pointed out as to where found in the record. In other words, we are left to search the record. This, we are not required to do. [Nevins v. Gilliland, 290 Mo. 1. c. 300, 301.]

We, however, owing to the unusual conditions occasioned by the absence of definite records and lapse of time before suit, have been compelled to give a very close study of the record in this case aided by data given in the appellant's written argument. Circumstances above mentioned gave rise to confusion and in the great volume of explanatory oral evidence immaterial evidence has crept in. We conclude, however, that the nature of this evidence was not prejudicial and does not present reversible error. As to the attorney fees and vexatious delay, we are borne out in our conclusion by the fact that it is clearly shown that no such elements entered into the verdict of the jury.

The defendant's third assignment claims error in the giving of plaintiff's instruction one. This instruction is an instruction on the measure of damages.

From citations of authority and from presentation in the written argument, we gather that the defendant is not complaining that the above instruction did not state the issue nor specify the facts which must be found to warrant a verdict. Further, that there is no instruction so defining.

The principle of law contended for is well set forth in Boyd v. St. Louis Transit Co., 108 Mo. App. 1. c. 306, 307. Wherever such a failure to instruct the jury, distinguishing or indicating the issue, is saved by proper objections and exception it becomes the duty of the appellate court to act in conformity with the law as expressed in the above case.

An examination of the record in this case shows that the defendant made but a general objection as to instruction one. The instruction, we conclude, is not bad as stating the measure of damages. It appears that the trial court's attention was not called to the point as now presented. Defendant's motion for a new trial does not properly raise the point as now presented and, in so far as this point is presented in the brief filed, we are dependent entirely upon the written argument and citation of authority to glean that such point is now intended to be raised.

506

In the case at bar we say; as was said in Young v. Wheelock, 64 S. W. (2d) l. c. 956, as follows:

"Defendants here did not object or save an exception, at the trial, to such a submission; they did not request the court to require plaintiff to over an instruction outlining a theory of recovery; nor did they request the court to give such an instruction. The question is not therefore preserved for review."

We conclude that defendant's instruction "C" was properly refused for the reason that the court properly refused to permit the plaintiff to submit the issues of vexatious delay.

As we conclude there was substantial evidence to entitle the case to go to the jury and as we further conclude that no reversible error is shown as to matters properly brought to the attention of the trial court and exceptions saved, we conclude that the judgment should stand. Therefore, the judgment is affirmed. All concur.